## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CREDENDO-SHORT-TERM
NON-EU RISKS

      Plaintiff,

v.

LOUIS ARRIOLA; WIZTEL USA, INC., a
Nevada corporation; JOSIAS MALLEN;
HANSEL HERNANDEZ; TELCO
SOLUTIONS, LLC, a Colorado limited
liability company; BRUCE SALZMAN;
OSMAR SEPULVEDA; TELCO
ENTERPRISE, INC., a Florida corporation;
TRISTAN NAPOLEON DESECHENES
MARTINEZ; VOISTER TELECOM, INC., a
Florida corporation; and ARISMENDI
SANTANA,

      Defendants.

Case No. _____

## **COMPLAINT**

      Credendo-Short-Term Non-EU Risks ("Plaintiff"), through the undersigned counsel, for its

Complaint against Louis Arriola; Wiztel USA, Inc.; Josias Mallen; Hansel Hernandez; Telco

Solutions, LLC; Bruce Salzman; Osmar Sepulveda; Telco Enterprise, Inc.; Tristan Desechenes

Martinez; Voister Telecom, Inc.; and Arismendi Santana (collectively, "Defendants"), alleges as

follows:

## **NATURE OF THE ACTION**

      1.      In this action, Plaintiff seeks, *inter alia*, money damages arising from Defendants'

fraudulent conduct whereby Defendants fraudulently reinstated certain companies, including

Florida companies; misappropriated corporate identities to enter into fraudulent contracts for

voice-over-internet-phone services; incorporated identically-named companies to open escrow

accounts to send and receive monies under the fraudulent contracts; and ultimately defraud Plaintiff for over EUR 1,400,000.

2.      This is not the first time Defendant Arriola has committed fraud using telecommunications companies. Indeed, in 2006, Arriola engineered a similar fraud whereby he and others pretended to be representatives of certain telecommunications companies, entered into fraudulent contracts, and then failed to pay for the charges incurred. Back then, Arriola pleaded guilty and was sentenced to prison. The U.S. Government feared that without appropriate punishment, Defendant Arriola would commit fraud again. Now, along with co-conspirators, he has.

3.      Accordingly, Plaintiff, as subrogee, brings this complaint seeking money damages for (i) common law fraud; (ii) conspiracy to commit fraud; and (iii) fraudulent inducement.

## PARTIES

4.      Plaintiff is a quasi-governmental insurance company headquartered in Belgium that provides credit insurance to companies in Italy through its branch office in Milan, among other products and services.

5.      Louis Arriola ("Arriola") is an individual domiciled in, and a citizen of, California. Upon information and belief, Arriola resides at 6735 Colgate Avenue, Los Angeles, California.

6.      Wiztel USA, Inc., ("Wiztel") is a telecommunications corporation formed under the laws of Colorado with its principal place of business at 3565 S Las Vegas Boulevard, Las Vegas, Nevada.

7.      Josias Mallen ("Mallen") is an individual domiciled in, and a citizen of, Florida. Upon information and belief, Mallen resides at 13811 SW 149th Cir. Ln., Suite 3, Miami, Florida

33186. Mallen purportedly owns 100% of the shares in Wiztel and a related company, UPI Telecom, Inc.

8.      Hansel Hernandez ("Hernandez") is an individual domiciled in, and a citizen of, New Jersey. Upon information and belief, Hernandez resides at 344 Grove Street, No. 4105, Jersey City, New Jersey. Hernandez is the President, Vice President, Treasurer, Secretary and sole shareholder of Red Phone Consulting, Inc.

9.      Telco Solutions, LLC ("Defendant Telco Solutions") is a telecommunications company organized under the laws of Colorado, with its principal place of business at 6525 Gunpark Drive, Suite 106, Boulder, Colorado.

10.     Bruce Salzman ("Salzman") is an individual domiciled in, and a citizen of, Florida. Upon information and belief, Salzman resides at 9831 NW 15th Street, Plantation, Florida. Salzman is the Chief Executive Officer and owns 100% of the interest in Defendant Telco Solutions.

11.     Osmar Sepulveda is an individual domiciled in, and a citizen of, New Jersey. Upon information and belief, Sepulveda resides at 69 Cathay Road, Clifton, New Jersey. Sepulveda is the director and sole shareholder of Telco Circuits.

12.     Telco Enterprise, Inc. ("Defendant Telco Enterprise") is a telecommunications company formed under the laws of Florida, with a principal place of business at 6501 Congress Avenue, Suite 100, Boca Raton, Florida.

13.     Tristan Napoleon Desechenes Martinez ("Desechenes") is an individual, citizen of the Dominican Republic, who is domiciled in and resides at 444 Brickell Avenue, No. 51, Miami, Florida. Desechenes is the sole shareholder of Defendant Telco Enterprise.

14.    Voister Telecom, Inc. ("Defendant Voister") is a telecommunications company formed under the laws of Florida, with a principal place of business at 1865 Brickell Avenue, Suite A1508, Miami, Florida.

15.    Arismendi Santana ("Santana") is an individual, citizen of the Dominican Republic, who is domiciled in and resides at 1865 Brickell Avenue, Suite A1508, Miami, Florida. Santana is the sole shareholder of Defendant Voister.

16.    Collectively, Defendants Arriola, Mallen, Hernandez, Salzman, Sepulveda, Desechenes, and Santana are hereinafter referred to as the "Individual Defendants."

17.    Defendants Wiztel, Telco Solutions, Telco Enterprise, and Voister are collectively referred to as the "Telecom Defendants."

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

19.    The Court has personal jurisdiction over Mallen, Salzman, Telco Enterprise, Desechenes, Voister, and Santana, because they reside, are domiciled in, and/or have their principal place of business in Florida.

20.    Defendants Arriola, Wiztel, Hernandez, Telco Solutions, and Sepulveda are subject to the Court's jurisdiction under the doctrine of conspiracy jurisdiction because the Defendants committed fraud and conspired to defraud Plaintiff by, in part, fraudulently reinstating Florida companies, submitting false corporate documents, misrepresenting themselves as representatives of such companies, and using the companies to defraud Plaintiff's insured, as described below.

21.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because some of the Defendants are residents of the State in which the district is located. *See supra*, ¶ 22.

## FACTUAL ALLEGATIONS

22.     Plaintiff provided credit insurance to Golem.com Srl ("Golem"), a company based in Milan, Italy, that offers wholesale voice services, including prepaid cards, voice-over-internet-phone services, and mobile services that allow its customers to route portions of their voice traffic to various destinations around the world.

23.     Between 2018 and 2019, at the direction of and in concert with Defendant Arriola, Defendants Mallen, Hernandez, Salzman, Sepulveda, Desechenes, and Santana (collectively, the "Individual Defendants") used Defendants Telco Solutions, Telco Enterprise, and Voister (collectively, the "Telecom Defendants") to steal, misappropriate or otherwise misrepresent the corporate identities of certain companies and thereafter enter into certain agreements with Golem for traffic routing services.

24.     Under each of the agreements, Golem would provide ongoing services and each of the Telecom Defendants would make payment to Golem as services were used.

25.     Defendants induced Golem to enter into said agreements, not only by misrepresenting themselves to be officers and representatives of legitimate companies (they were not), but also by providing falsified financial statements for each of the Telecom Defendants.

26.     Each of the Telecom Defendants made initial payments to Golem through their respective escrow accounts at DealDefenders, LLC—a secure escrow service for the telecommunications industry—which allowed payments to be made without revealing the ultimate source of the funds.

27.     Defendants Mallen, Hernandez, Salzman, Sepulveda, Desechenes, and Santana opened accounts at DealDefenders by sending an e-mail correspondence stating that (i) Louis Arriola had referred them and (ii) they needed to open an escrow account even though they did not have a bank account at that moment.

28.     All of the Telecom Defendants' accounts at DealDefenders were funded by Defendant Wiztel. Once Defendant Wiztel transferred funds to each one of the Telecom Defendants, each of the Telecom Defendants would make payments (in substantially the same amount as each transfer from Wiztel) to Golem and other third parties, some of which are connected to Arriola and/or involved in similar fraudulent schemes.

29.     After making several payments, Defendants Telco Solutions, Telco Enterprise, and Voister received VOIP minutes from Golem under misrepresented pretenses, but failed to pay for said minutes, causing damages to Golem in excess of EUR 1.2 million.

*Golem's Relationship with UPI*

30.     UPI Telecom, Inc. is a corporation formed under the laws of California in 1995 (the "Original UPI").

31.     Per the California Secretary of State website, David Chien has been the Chief Executive Officer of the Original UPI at all material times.

32.     In or about November 2018, Defendant Mallen, in concert with the Individual Defendants and misrepresenting himself a as representative of the Original UPI, entered into an agreement with Golem on the Original UPI's behalf to receive products and telecommunications services (the "UPI Agreement").

33.     The UPI Agreement specifically identifies Original UPI as a party and states that it is represented by David Chien "in his quality of CEO."

34.     However, in fact, David Chien was the only employee of Original UPI and did not sign the UPI Agreement. Therefore, the UPI Agreement was not authentic, because neither he nor Original UPI had a relationship with Golem. Mr. Chien informed the police that a fraudster(s) had created a website purporting to be the Original UPI, but that it had been removed once the fraudster(s) became aware that Mr. Chien knew of it.

35.     At around the same time, in October 2018, Defendant Mallen, in concert with and at the direction of the Individual Defendants, incorporated a similarly named company, UPI Telecom, Inc., with a principal place of business at 9490 Vivid Colors, Las Vegas, Nevada, 89148 ("False UPI").

36.     Weeks after executing the UPI Agreement, on or about December 6, 2018, Defendant Mallen, at the direction of and in concert with the Individual Defendants, sought to open an account for False UPI at DealDefenders.

37.     In his initial correspondence with DealDefenders, Defendant Mallen or an Individual Defendant purporting to be Mallen stated that "UPI does not have a banking presence at all as it was opened recently. . ."

38.     Defendant Mallen also provided DealDefenders with a copy of his U.S. Passport, his Florida drivers' license, False UPI's Articles of Incorporation, and a Beneficial Ownership Form stating that he was the sole owner of False UPI.

39.     On December 10, 2018, Wiztel transferred USD 50,029.26 to False UPI. On the same day, False UPI transferred USD 49,950.00 to Route Trader, Ltd.

40.     Even though False UPI did not have a contract with Golem, False UPI received products and services from Golem and used its DealDefenders escrow account to transfer over EUR 2.2 million to Golem.

41.     Thus, this supports David Chien and Original UPI not having a legitimate (or any) relationship with Golem, the UPI Agreement being fraudulent.

42.     Accordingly, Defendant Mallen, in concert with the Individual Defendants, induced Golem to enter into the UPI Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

43.     False UPI received additional products and services from Golem but defaulted on some of its payment obligations.

44.     Some version of this fraudulent scheme was repeated with each of the entities below.

*Golem's Relationship with Red Phone*

45.     Red Phone Consulting, LLC (the "Original Red Phone") is a company organized under the laws of Colorado on or about March 10, 2006, by Jacob Leis, who has been the company's managing member at all relevant times.

46.     On December 13, 2018, Defendant Hernandez, in concert with and at the direction of the Individual Defendants, incorporated a similarly named company, Red Phone Consulting, Inc., with a principal place of business at 344 Grove Street, No. 4105, Jersey City, New Jersey (the "False Red Phone").

47.     The next day, on December 14, 2018, in concert with and at the direction of the Individual Defendants, Defendant Hernandez sought to open an escrow account at DealDefenders on behalf of False Red Phone.

48.     In his initial correspondence to DealDefenders, Defendant Hernandez or an Individual Defendant purporting to be Hernandez stated that he had been referred to DealDefenders by Defendant Arriola, that they had created new entities "for business with Mr.

Arriola" and were told to register the escrow account at DealDefenders, and that the "new entities" did not have bank accounts set up at that time.

49.     To open the DealDeafenders account, Defendant Hernandez or an Individual Defendant purporting to be Hernandez provided a copy of Hernandez's U.S. Passport, False Red Phone's W-9 Form, and a Beneficial Ownership Form stating that Hernandez was the sole owner of False Red Phone.

50.     Days later, on December 19, 2019, Wiztel transferred USD 250,030.00 to False Red Phone; and, on the same day, False Red Phone transferred USD 250,000.00 to Ekit.com, Inc.[1]

51.     On February 26, 2019, Defendant Hernandez or an Individual Defendant purporting to be Hernandez falsely represented himself as Jacob Leis and entered into an agreement on behalf of the Original Red Phone with Golem to receive products and telecommunications services (the "Red Phone Agreement").

52.     In furtherance of the Red Phone Agreement, Defendants Hernandez, in concert and at the direction of the Individual Defendants, provided false financial statements of the Original Red Phone to Golem.

53.     Under the Red Phone Agreement, although the purchasing party is identified as the Original Red Phone, the Agreement states that payments are to be made to False Red Phone Consulting, *Inc*. at its DealDefenders escrow account.

54.     Defendants Hernandez, in concert with and at the direction of the Individual Defendants, induced Golem to enter into the Red Phone Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

---

[1]     The small difference between the incoming and outgoing transfers accounts for the USD 30 fee charged by DealDefenders for each transaction.

55.     On February 11, 2021, Jacob Leis, the President and CEO of the Original Red Phone, confirmed that the Red Phone Agreement was fraudulent. Specifically, Mr. Leis provided a sworn affidavit stating that neither he nor the Original Red Phone had any relationship with Golem and that "any actions by any person purporting to be on behalf of [the Original Red Phone] toward Golem were unknown to [the Original Red Phone], [] were done without the authorization, knowledge or consent of [the Original Red Phone]; . . . and without any legal, legitimate, or recognized business purpose."

56.     Even though False Red Phone was not a party to the Red Phone Agreement, False Red Phone received products and services from Golem, and used its DealDefenders escrow account to transfer over EUR 1.2 million to Golem.

57.     False Red Phone received additional products and services from Golem but defaulted on some of its payment obligations.

*Golem's Relationship with Telco Solutions*

58.     Telco Solutions, LLC was organized under the laws of Arizona on December 6, 2006 (the "Original Telco Solutions"). The Original Telco Solutions is a company unrelated to Defendant Telco Solutions.

59.     On January 10, 2019, Defendant Salzman, in concert with and at the direction of the Individual Defendants, formed an identically named company, Defendant Telco Solutions, LLC, under the laws of Colorado.

60.     The next day, on January 11, 2019, in concert with and at the direction of the Individual Defendants, Defendant Salzman sought to open an escrow account at DealDefenders on behalf of Defendant Telco Solutions.

61.     The subject line of the initial correspondence to DealDefenders was "Louis Arriola Referred me" and, the body of the e-mail stated: "[a]s far as ba[n]king i will be opening the account next week Louis tells me that should not be a problem."

62.     To open the DealDeafenders account, Defendant Salzman or an Individual Defendant purporting to be Salzman provided a copy of Salzman's Florida driver's license, Defendant Telco Solutions's Colorado Articles of Organization, Defendant Telco Solutions's W-9 Form, and a Beneficial Ownership Form stating that Salzman was the sole owner of Defendant Telco Solutions.

63.     On the same day Defendant Telco Solutions opened its account at DealDefenders, it received USD 194,485.00 from Defendant Wiztel. Later that day, on January 11, 2019, Defendant Telco Solutions transferred USD 194,455.00 to Route Trader Ltd.

64.     Subsequently, on May 22, 2019, Defendant Salzman or an Individual Defendant purporting to be Salzman misrepresented himself as Amy Hass (the CEO of the Original Telco Solutions) and entered into an agreement with Golem on behalf of the Original Telco Solutions (the "Telco Solutions Agreement").

65.     In furtherance of the Telco Solutions Agreement, Defendants Salzman and Telco Solutions provided Golem with false financial statements of the Original Telco Solutions.

66.     Under the Telco Solutions Agreement, although the purchasing party is identified as the Original Telco Solutions, the Agreement states that payments are to be made to Defendant Telco Solutions's escrow account at DealDefenders.

67.     Thus, Defendant Salzman and the Individual Defendants induced Golem to enter into the Telco Solutions Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

68.     Even though Defendant Telco Solutions was not a party to the Telco Solutions Agreement, Defendant Telco Solutions received products and services from Golem, and used its DealDefenders escrow account to transfer over EUR 1.8 million to Golem.

69.     Defendant Telco Solutions received additional products and services from Golem by fraudulent means, defrauding Golem for EUR 441,506.90.

70.     Golem submitted an insurance claim to Plaintiff, and Plaintiff indemnified Golem, consistent with its insurance policy.

*Golem's Relationship with Telco Circuits*

71.     Telco Circuits, Inc. was incorporated in Florida on October 20, 2009 (the "Original Telco Circuits").

72.     From inception, the President of the Original Telco Circuits was Hubert Curtis Harrison, its Vice-President was Cheryl Thompson, and its Secretary and Treasurer was Kenneth Tweed.

73.     The Original Telco Circuits was administratively dissolved in 2014 for failure to file an annual report.

74.     Unbeknownst to the officers of the Original Telco Circuits, on or about April 25, 2019, the Original Telco Circuits was fraudulently reinstated with the Florida Secretary of State.

75.     On May 30, 2019, Defendant Sepulveda, in concert with and at the direction of the Individual Defendants, incorporated an identically named company, Telco Circuits, Inc., with its principal place of business at 69 Cathay Road, Clifton, New Jersey ("False Telco Circuits").

76.     The same day, in concert with and at the direction of the Individual Defendants, Defendant Sepulveda sought to open an escrow account at DealDefenders on behalf of False Telco Circuits.

77.     In the initial correspondence with DealDefenders, Defendant Sepulveda or an Individual Defendant purporting to be Sepulveda stated: "Dear Jeff, my name is Osmar Sepulveda, i am a friend of Louis Arriola i am going to start business on your platform using your escrow service to trade with LDI Networks[2], if you will allow me a few days to go open the bank account for the corporation i will truly appreciated as today is a very complicated day for me, Louis told me you could help me in this matter. . ."

78.     To open the DealDeafenders account, Defendant Sepulveda or an Individual Defendant purporting to be Sepulveda provided a copy of Sepulveda's New Jersey driver's license, False Telco Circuits's New Jersey Certificate of Incorporation, False Telco Circuits's W-9 Form, and a Beneficial Ownership Form stating that Sepulveda was the sole owner of False Telco Circuits.

79.     The same day False Telco Circuits opened its account at DealDefenders it received USD 357,030.00 from Lucas Phone Corp., another company formed and owned by Defendant Mallen. Later that day. On May 30, 2019, False Telco Circuits transferred USD 357,000.00 to Exclusive Group Holdings, LLC.

80.     On or about May 15, 2019, Defendant Sepulveda, in concert with and at the direction of the Individual Defendants, misrepresented himself as "Kenneth Tweed in his quality of President [of Telco Florida]" and entered into an agreement with Golem on behalf of the Original Telco Circuits (the "Telco Circuits Agreement").

81.     In furtherance of the Telco Circuits Agreement, Defendant Sepulveda and False Telco Circuits provided Golem with false financial statements of the Original Telco Circuits.

---

[2]     LDI refers to LDI Networks, Inc., a Florida corporation in which Louis Arriola had an ownership interest.

82.     On August 19, 2020, Hubert Curtis Harrison filed a Statutory Declaration with the Florida Secretary of State in which he affirmed under oath that "[a]n individual unknown and/or unauthorized by us reinstated Telco Circuits on 04/25/2019. We would like this corporation closed and please send us all information possible on the individual who reinstated Telco Circuits as an active corporation."

83.     Subsequently, Cheryl Thompson, in her capacity as Vice-President of the Original Telco Circuits, provided Plaintiff's counsel with an affidavit stating that the Original Telco Circuits "has never had a relationship with Golem," the Original Telco Circuits did not receive produces and/or services from Golem, and any actions purportedly taken on behalf of the Original Telco Circuits were done without that company's "authorization, knowledge, or consent," and "without any legal, legitimate, or recognized business purpose."

84.     Thus, Defendant Salzman, in concert with and at the direction of the Individual Defendants, induced Golem to enter into the Telco Circuits Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

85.     Even though False Telco Circuits was not a party to the Telco Circuits Agreement, False Telco Circuits received products and services from Golem, and used its DealDefenders escrow account to transfer over EUR 2.7 million to Golem.

86.     False Telco Circuits received additional products and services from Golem but defaulted on its payment obligations. While Plaintiff denied Golem's claim with respect to False Telco Circuits, the scheme perpetrated specifically through False Telco Circuits fits the same pattern and was part of the same fraudulent scheme that caused damages to Golem.

*Golem's Relationship with Telco Enterprise*

87.      Defendant Telco Enterprise was incorporated in Florida on July 20, 2015, and, at that time, had its principal place of business in Pensacola, Florida.

88.      Defendant Telco Enterprise did not file annual reports with the Florida Secretary of State after January 19, 2016, and, therefore, was administratively dissolved.

89.      Between 2015 and 2016, Defendant Telco Enterprise's President was James C. Wood, and its Vice-President was Christopher S. Watson—both of whom had addresses in Pensacola, Florida.

90.      On March 12, 2019, in concert with and at the direction of the Individual Defendants, Desechenes caused Defendant Telco Enterprise to be fraudulently reinstated.

91.      In its reinstatement form, Barbara Rosario Soto was listed as Defendant Telco Enterprise's President and registered agent, and the company's principal place of business was moved to 6501 Congress Avenue, Suite 100, Boca Raton, Florida.

92.      On August 29, 2019, in concert with and at the direction of the Individual Defendants, Desechenes sought to open an escrow account at DealDefenders for Telco Enterprise.

93.      In the initial correspondence to DealDefenders, Desechenes or an Individual Defendant purporting to be Desechenes stated: ". . . I am the chairman of Telco Enterprise Inc. Louis [Arriola] has requested I move my business to your platform. We do not currently have a bank account open per say . . . In the mean time I would really appreciate if you could open the telfinance account so we can start trading with LDI [Networks]."

94.      To open the DealDeafenders account, Desechenes or an Individual Defendant purporting to be Desechenes provided a copy of Desechenes's passport, Defendant Telco

Enterprise's Articles of Incorporation, Defendant Telco Enterprise's W-9 Form, and a Beneficial Ownership Form stating that Desechenes was the sole owner of Defendant Telco Enterprise.

95.     In addition, Desechenes or an Individual Defendant purporting to be Desechenes provided DealDefenders with a falsified document purporting to be the Internal Revenue Service's (IRS) assignment of an employer identification number for Defendant Telco Enterprise.

96.     Other than Desechenes's statements to DealDefenders, there is no evidence he was an officer, representative, director, or otherwise authorized to act on behalf of Defendant Telco Enterprise.

97.     Desechenes's false representation that he was an officer of Defendant Telco Enterprise is a violation of Florida law.

98.     On or about August 30, 2019, the day after Desechenes and/or the Individual Defendants opened Defendant Telco Enterprise's DealDefenders account, Wiztel transferred USD 193,192.00 to Defendant Telco Enterprise. The same day, Defendant Telco Enterprise transferred USD 193,162.00 to Alterna Capital Solutions, LLC (a Florida company that obtained a money judgment against Defendant Arriola in September 2020). *Alterna Capital Solutions, LLC v. Louis Arriola*, 2:20-cv-07277 (C.D. Cal.).

99.     On October 24, 2019, Desechenes in concert with and at the direction of the Individual Defendants misrepresented himself as Brandon Soto and entered into an agreement on behalf of Defendant Telco Enterprise with Golem to receive products and telecommunications services (the "Telco Enterprise Agreement").

100.    There are no public documents reflecting an association of "Brandon Soto" with Telco Enterprise.

101.    According to the Telco Enterprise Agreement, Brandon Soto's email address with the domain address of "@telco-enterprise.com." This domain address was registered on February 21, 2019, through www.namecheap.com – the same company used to register the domains for all other Telecom Defendants.

102.    Thus, Desechenes in concert with and at the direction of the Individual Defendants, induced Golem to enter into the Telcom Enterprise Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

103.    During the year 2020, Telco Enterprise paid over EUR 1.75 million to Golem.

104.    Subsequently, Defendant Telco Enterprise received additional products and services from Golem, not paid for, ultimately defrauding Golem for EUR 501,704.58.

105.    Golem submitted an insurance claim to Plaintiff, and Plaintiff indemnified Golem for its loss arising from this transaction pursuant to its insurance policy.

106.    Defendant Telco Enterprise's last annual report on file with the Florida Secretary of State is dated March 12, 2019, and the company was again administratively dissolved on September 25, 2020.

107.    It appears the sole purpose for Telco Enterprise's reinstatement was to fraudulently enter into the Telco Enterprise Agreement and defraud Golem.

*Golem's Relationship with Voister*

108.    Defendant Voister was incorporated in Florida on or about October 23, 2012, and was active filing annual reports until 2015. From inception, Artutro Malave acted as Defendant Voister's President, and Laura Villegas acted as its Vice-President.

109.    On May 14, 2019, in concert with and at the direction of the Individual Defendants, Defendant Santana caused Defendant Voister to be fraudulently reinstated.

110.    On August 27, 2019, in concert with and at the direction of the Individual Defendants, Santana sought to open an escrow account at DealDefenders on behalf of Defendant Voister.

111.    The initial correspondence (which had the subject line "Referred by Louis Arriola") stated "Dear Jeff. I am a friend of Louis Arriola, I will now be joining your platform for trading at his request. Here is all the company papers we use. . . I will go open a new [bank account] tomorrow for the business."

112.    To open the DealDeafenders account, Santana, or an Individual Defendant purporting to be Santana, provided a copy of Santana's identification, Defendant Voister's corporate reinstatement, Defendant Voister's W-9 Form, and a Beneficial Ownership Form stating that Santana was the sole owner of Defendant Voister.

113.    In addition, Santana, or an Individual Defendant purporting to be Santana, provided DealDefenders with a falsified document purporting to be the Internal Revenue Service's (IRS) assignment of an employer identification number for Defendant Voister.

114.    Other than Santana's statements to DealDefenders, there is no evidence he was an officer, representative, director, or otherwise authorized to act on behalf of Defendant Voister.

115.    Santana's false representation that he was an officer of Defendant Voister is a violation of Florida law.

116.    The same day Santana opened the DealDefenders account, Defendant Wiztel transferred USD 132,772.80 to Defendant Voister and, subsequently, Defendant Voister transferred USD 132,742.80 to Alterna Capital, LLC.

117.    Subsequently, on or about October 24, 2019, in concert with and at the direction of the Individual Defendants, Santana executed an agreement with Golem on behalf of Defendant Voister (the "Voister Agreement").

118.    In furtherance of the Voister Agreement, Defendants Santana and Voister provided Golem with false financial statements of Defendant Voister.

119.    Santana did not actually own Defendant Voister, but simply stole or otherwise misappropriated its corporate identity to use Defendant Voister in the scheme to defraud Golem.

120.    Indeed, in early 2021, Defendant Voister's original Vice-President confirmed via telephone that she and her cousin, Arturo Malave, closed the company in prior years, were no longer involved with Voister, and did not know who Santana was.

121.    Thus, Santana, in concert with and at the direction of the Individual Defendants, induced Golem to enter into the Voister Agreement by misrepresenting their true identities and with the purpose of defrauding Golem.

122.    Defendant Voister received products and services from Golem, but defaulted on its payment obligations to Golem, ultimately defrauding Golem for EUR 473,649.61.

123.    Golem submitted an insurance claim to Plaintiff, and Plaintiff indemnified Golem consistent with its insurance policy.

_This is Not Arriola's First Telecommunications Fraud_

124.    The fraudulent scheme described above is another iteration of a similar scheme perpetrated previously by Defendant Arriola.

125.    In 2006, Arriola and others pretended to be representatives of Saint Gobain Corporation ("SGC") to lease office space in California. Then, pretending to be representatives of

SGC, Arriola and his co-conspirators entered into telecommunication service contracts with telecommunications service providers (the "Providers").

126.    Arriola, through SGC, made partial payments to the Providers to give the impression that SGC was conducting a legitimate business.

127.    A Provider reached out to SGC to ask about an unusually high international call volume appearing on the SGC account. The SGC fraudsters said the high call volume was only temporary. Then, one of the SGC fraudsters sent an email to the Provider saying that they had sent a check via FedEx. So, believing that the payment would arrive soon, the Provider continued to provide services.

128.    When the Provider received the FedEx package, it did not have a check, but a blank piece of paper. At that point the Provider cancelled the SGC account.

129.    Based on the above conduct, in 2008 Defendant Arriola pled guilty to one count of aiding and abetting mail fraud and he was sentenced to 27 months in federal prison and 36 months of probation. *See* Plea Agreement, *U.S. v. Louis Arriola*, No. 08-cr-683-ODW, (C.D. Cal. Apr. 29, 2009), D.E. 3. He was also ordered to pay USD 490,798 in restitution to his victims.

130.    According to the U.S. Government's sentencing position in that case, the 2006 fraud was the second time Defendant Arriola committed fraud. *See* Sentencing Position, *U.S. v. Louis Arriola*, No. 08-cr-683-ODW, (C.D. Cal. Apr. 29, 2009), D.E.28. In 2001, Defendant Arriola perpetrated a similar telecommunications fraud while employed at a company called Telepacific. *Id.*

131.    In its Sentencing Position, the U.S. Government Concludes that "[i]n consideration of this history and absent a strong punishment, the government views defendant [Arriola] as an extremely high risk of committing telecommunications fraud again." *Id.* at 11.

132.     It appears the punishment was not strong enough and, as predicted, Defendant Arriola committed telecommunications fraud once again.

*Golem's Insurance Policy with Plaintiff*

133.     In late 2019, Golem sought to obtain a credit insurance policy from Plaintiff to cover the non-payment of claims arising out of relationships it maintained with twenty-one customers around the world, including 18 entities in the United States.

134.     In November 2019, Plaintiff granted insurance coverage for Golem's sales to the Telcom Defendants. The insurance policy became effective November 1, 2019.

135.     In January 2021, Golem submitted an insurance claim to Plaintiff seeking indemnification from its alleged losses from each of the Telcom Defendants based on the Telcom Defendants' near-simultaneous default on their payment obligations to Golem.

136.     After an investigation, Plaintiff indemnified Golem with respect to the claims relating to Defendants Telco Solutions, Telco Enterprise, and Voister consistent with each applicable insurance policy.

137.     Thus, Plaintiff has been damaged in the amount of EUR 1,416,861.09, exclusive of interest and attorney's fees, as a direct result of Defendants' fraudulent acts, misrepresentations, and omissions.

138.     Under Article 18 of Credendo's General Terms, which govern its relationship with Golem, Plaintiff, as the insurer, "shall have the right to be subrogated in all rights and actions of the beneficiary of the insurance [Golem], with regard to the transaction, and to the extent of its effective intervention."

139.     Golem's right to payment from Defendants has been subrogated to Plaintiff.

140.     This action is to recover the value of Plaintiff's indemnifications to Golem, plus its reasonable attorneys' fees and costs, caused by the fraudulent scheme perpetrated by Defendants upon Golem.

## COUNT I – FRAUD

141.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 140 of this Complaint as if fully set forth herein.

142.     This is an action for fraud against the Individual Defendants and the Telecom Defendants.

143.     Each Individual Defendant made false statements to Golem about a material fact; specifically, Defendants made false statements about their identities, pretending to be the legitimate representatives of the Original UPI; the Original Red Phone; the Original Telco Solutions; the Original Telco Circuits; Telco Enterprise; and Voister, when they were not.

144.     Similarly, the Telecom Defendants made false statements about their identity, pretending to be legitimate telecommunications companies, when they were just shells that were set up with the express intent to defraud Golem and others.

145.     The Individual Defendants and the Telecom Defendants intended that their false statements would induce Golem to enter into certain agreements with the Telecom Defendants, as defined above.

146.     Golem indeed relied on Defendants' false statements, entered into telecommunications services agreements with each Telecom Defendant, and provided route trafficking services to the Individual Defendants and Telecom Defendants.

147.     As a result of the Individual Defendants' and Telcom Defendants' false statements and Golem's reliance thereon, Golem suffered damages totaling EUR 1,416,861.09.

22

WHEREFORE, Plaintiff demands judgment against the Individual Defendants and Telecom Defendants for the principal amount of EUR 1,416,861.09, plus accrued and accruing pre and post judgment interest, costs, attorneys' fees, and for all such other and further relief as the Court deems just and proper.

## COUNT II- CONSPIRACY TO COMMIT FRAUD

148.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 147 of this Complaint as if fully set forth herein.

149.    This is an action for conspiracy to commit fraud against all Defendants.

150.    The Individual Defendants had an agreement to commit fraud using the Telecom Defendants as a front to enter into seemingly legitimate contracts and defraud Golem.

151.    Defendant Arriola was the mastermind behind this fraudulent scheme, as he had previously committed a similar telecommunications fraud.

152.    Each of the Individual Defendants committed an overt act in furtherance of the conspiracy to commit fraud when they (i) created companies that had the identical name of and that would be easily confused with other previously inactive companies; (ii) made express statements that they represented each of these companies in order to enter into fraudulent agreements with Golem; and (iii) used these misappropriated corporate identities to open escrow accounts at DealDefenders on behalf of each of the Telecom Defendants.

153.    As a result of Defendants' fraudulent acts, misrepresentations, and omissions, Plaintiff, as Golem's insurer and assignee, suffered damages in the principal amount of EUR 1,416,861.09.

WHEREFORE, Plaintiff demands judgment against Defendants for the principal amount of EUR 1,416,861.09, plus accrued and accruing pre and post judgment interest, costs, attorneys' fees, and for all such other and further relief as the Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT

154.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 153 of this Complaint as if fully set forth herein.

155.    This is an action for unjust enrichment against the Individual Defendants and the Telecom Defendants.

156.    Golem, as Plaintiff's insured, conferred a benefit on each of the Individual Defendants and the Telecom Defendants by providing traffic routing services to each one.

157.    Each of the Individual Defendants and Telecom Defendants voluntarily accepted and used the traffic routing services provided by Golem.

158.    However, the Individual Defendants and the Telecom Defendants failed to pay the entire agreed price for the services provided.

159.    It would be inequitable for the Individual Defendants and the Telecom Defendants to retain the benefit of the traffic routing services provided by Golem without repaying the value of said services to Plaintiff in its capacity of Golem's subrogee.

WHEREFORE, Plaintiff demands judgment against the Telecom Defendants for the principal amount of EUR 1,416,861.09, plus accrued and accruing pre and post judgment interest, costs, attorneys' fees, and for all such other and further relief as the Court deems just and proper.

Dated: November 7, 2023

Respectfully submitted,

 /s/ Cristina Vicens Beard
Cristina Vicens Beard
Florida Bar No. 111357
M. Zachary Bluestone (*Pro Hac Vice* to be filed)
Attorneys for Plaintiff
**BLUESTONE, P.C.**
1717 K Street, Suite 900
Washington D.C. 20006
202.655.2250 (telephone)
cvb@bluestonelaw.com
mzb@bluestonelaw.com